**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

**JTC HOLDINGS, LLC, a Colorado limited liability company,**

      **Plaintiff**,

**vs.**

**PETER F. GARY, an individual and Florida citizen;
PINNACLE HOLDINGS GROUP, LLC, a Florida limited liability company;
PINNACLE ADVERTISING & MARKETING GROUP, LLC, a Florida limited liability company;
PINNACLE ADVISORY MANAGEMENT, LLC, a Florida limited liability company; and
PINNACLE DIGITAL, LLC, a Florida limited liability company.**

      **Defendants.**

---

## COMPLAINT

---

    Plaintiff JTC Holdings, LLC ("Plaintiff" or "JTC"), through its attorneys MOYE WHITE LLP, hereby files its Complaint against Defendants Peter F. Gary ("Gary"), Pinnacle Holdings Group, LLC ("Pinnacle Holdings"), Pinnacle Advertising & Marketing Group, LLC ("PAMG"), Pinnacle Advisory Management, LLC ("Pinnacle Advisory"), and Pinnacle Digital, LLC ("Pinnacle Digital") (collectively, the "Pinnacle Companies"). The Defendants in this case are collectively referred to as "Defendants."

### I.    NOTICE OF RELATED CASES

    1.    Pursuant to D.C.COLO.LCivR 3.2, JTC hereby states that there are two similar or related proceedings. The first is case number 502015CA012956XXXXMB in the Circuit Court of the Fifteenth Judicial Court in and for Palm Beach County, Florida, *JTC Holdings, LLC v. Peter*

*F. Gary, Pinnacle Holdings Group, LLC, Pinnacle Advertising & Marketing Group, LLC, Pinnacle Advisory Management, LLC and Pinnacle Digital, LLC* (the "Records Action").  The second is case number 502016CA009593XXXXMB in the Circuit Court of the Fifteenth Judicial Court in and for Palm Beach County, Florida, *Peter F. Gary individually and on behalf of Pinnacle Advertising & Marketing Group, LLC v. Michael Saks, Pedro Goncalves, Daniel Bishop, Parkmarx Advertising, LLC and JTC Holdings, LLC*.  These two cases have now been consolidated.

## II.        PARTIES

2.        JTC is a Colorado limited liability company with a principal place of business located at 6953 Secrest Court, Arvada, Colorado 80007-7561.

3.        JTC is wholly owned by Daniel Bishop ("Bishop"), a citizen of Colorado.

4.        Daniel Bishop is JTC's registered agent, Chief Executive Officer, and sole member.

5.        Defendant Peter F. Gary is a citizen of Florida and resides in Palm Beach County, Florida.

6.        Defendant Gary is a Managing Member and the Chief Executive Officer of the Pinnacle Companies.

7.        Defendant Pinnacle Companies are Florida limited liability companies with a shared principal business address of 1515 South Federal Highway 406 Boca Raton, Florida 33432.

## III.       JURISDICTION AND VENUE

8.        This case involves JTC's ownership interests and investments in the Pinnacle Companies.

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000.00.  Plaintiff and Defendants are citizens of different states, and Plaintiff's claims relate to its $1,250,000.00 investment in the Pinnacle Companies.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this case occurred in Colorado.  JTC is a Colorado limited liability company and conducts its business activities from its office in Colorado.  All actions taken by JTC regarding its interests in the Pinnacle Companies have occurred in Colorado.  Additionally, all communications received by JTC related to the matters involved in this litigation were received by JTC in Colorado.  Further, Defendant Gary, while acting on behalf of the Pinnacle Companies, transacted business, and committed tortious acts, in Steamboat Springs, Colorado during March of 2015.

## IV.     FACTUAL ALLEGATIONS

### A.     Summary of this Action.

11.     This case is about Defendant Gary's scheme to use JTC's $1,250,000.00 investment in the Pinnacle Companies to fund Defendant Gary's lavish lifestyle.  This case arises after a prolonged corporate records case in Florida (the "Records Case," identified above) revealed that Defendant Gary is spending an estimated $20,000 per month (if not more) of the Pinnacle Companies' money derived almost wholly from the sums invested by Plaintiff, on personal expenses like school tuition for his children, Gucci clothing, firearms and high end furniture.[1]

---

[1] The Florida corporate records case resulted in JTC being entitled to its attorney fees after Defendant Gary was compelled to properly respond to discovery requests in the Records Action

Even worse, Defendant Gary now asserts that JTC's membership interest in the Pinnacle Companies has been reduced to zero without the consent of JTC and in violation of the Pinnacle Companies' Operating Agreements.

12.     When considered in their totality, the facts in this case demonstrate that during the pendency of his personal bankruptcy case, Defendant Gary concocted a plan whereby he created the Pinnacle Companies and then obtained investors for the Pinnacle Companies.

13.     As soon as Defendant Gary obtained capital contributions from investors, including JTC, Defendant Gary began using the Pinnacle Companies' funds to pay for his extravagant lifestyle. Through the Records Action, JTC learned that shortly after and during the period of time that JTC was investing in the Pinnacle Companies, Defendant Gary was charging thousands of dollars in personal expenses for items like luxury clothing, firearms, and video games each month to an American Express card. Then each month, Defendant Gary directed the Pinnacle Companies' Chief Financial Officer to pay these American Express credit card bills without disclosing to the CFO the actual statements or providing any documentation of the charges. Defendant Gary never disclosed these payments to JTC until he was compelled to do so by a Florida Circuit Court Judge in the Records Action.

14.     While draining the Pinnacle Companies' resources by having them pay his extravagant personal expenses, Defendant Gary began asking JTC, the other Members, and new investors, to make additional capital contributions, misleading investors that they were funding the

---

resulting in the production of credit card statements that revealed Defendant Gary's misuse of corporate funds.

Pinnacle Companies' payroll when, in fact, the funds were used to fund Defendant Gary's personal expenses.

15.     When JTC became understandably suspicious of Defendant Gary's actions and demanded to review the Pinnacle Companies' books and records, Defendant Gary refused to produce the books and records which violated the Pinnacle Companies' Operating Agreements and Florida law.

16.     After repeated requests, JTC exercised its right as a member of the Pinnacle Companies to bring the Records Action under Fla. Stat. § 605.0801 to compel Defendant Gary and the Pinnacle Companies to produce for inspection financial and other information regarding the Pinnacle Companies.

17.     After commencement of the Records Action, in retaliation against JTC, Defendant Gary and the Pinnacle Companies took actions to improperly dilute and eliminate JTC's entire ownership interest in the Pinnacle Companies to zero (through the issuance of false K-1s to JTC and Bishop), and then dissolved certain of the Pinnacle Companies.

18.     As a result, JTC brings this lawsuit to hold Defendant Gary and the Pinnacle Companies accountable for swindling JTC out of its investment in the Pinnacle Companies.

**B.      The Formation of the Companies Involved in this Litigation.**

19.     On July 31, 2008, Defendant Gary filed for personal bankruptcy.  On February 2, 2009, Defendant Gary's bankruptcy plan was approved.

20.     On July 21, 2010, Defendant Gary formed PAMG.  Defendant Gary created PAMG to provide advertising services in the State of Florida.

21.     On March 27, 2012, Pedro Goncalves ("Goncalves") formed Trinity International, LLC, as a Florida limited liability company ("Trinity").   Goncalves was the sole member of Trinity.  Trinity would later become a member of the Pinnacle Companies.

22.     On March 14, 2013, Michael Saks ("Saks") formed Group NV, LLC ("Group NV") as a Florida limited liability company involved in the advertising business.  Saks was the sole owner of Group NV.

23.     After forming Group NV, Saks approached Bishop about investing in Group NV.

24.     On March 24, 2013, Bishop formed JTC as a Colorado limited liability company. Bishop is the sole member of JTC.  At the time Bishop formed JTC, he was in discussions with Saks about joining Group NV and about investing funds in the Pinnacle Companies, either individually or through JTC.

25.     On May 24, 2013, Arthur Benjamin formed SMGI United, LLC, as a Texas limited liability company.  SMGI would later become a member of PAMG.

26.     On September 30, 2013, Group NV and PAMG entered into a "Buy-Sell Agreement" whereby PAMG transferred 44% of its outstanding shares to a new entity named Pinnacle Holdings.  Group NV transferred 100% of its outstanding shares to Pinnacle Holdings. At the time the parties executed the Buy-Sell Agreement, Defendant Gary owned 100% of PAMG.

27.     On October 28, 2013, Defendant Gary's bankruptcy case was discharged.

28.     On June 17, 2014, Defendant Gary formed Pinnacle Digital, LLC, a Florida limited liability company.

29.     On June 17, 2014, Defendant Gary formed FNB Media, LLC ("FNB"), a Florida limited liability company with Defendant Gary as the sole owner.  FNB would later become a member of the Pinnacle Companies.

30.     On August 21, 2014, Defendant Gary formed Pinnacle Holdings Group, LLC, a Florida limited liability company.  Upon information and belief, this Pinnacle Holdings is the same Pinnacle Holdings referenced in Paragraph 27 as having been involved in the Buy-Sell Agreement.

31.     On October 1, 2014, Operating Agreements for each of the Pinnacle Companies were executed.  *See* Composite **Exhibit 1**:  Operating Agreements for Pinnacle Holdings, PAMG and Pinnacle Digital, annexed hereto and made a part hereof.

32.     On January 28, 2015, PAMG's operating agreement was amended to add SMGI as a Managing Member.  **Exhibit 2**:  First Amendment to Operating Agreement for PAMG.

33.     As part of joining PAMG, SMGI contributed $500,000.00 into the Pinnacle Companies.  Defendant Gary claimed SMGI's money would be used to pay down a large media debt but in reality the money was used for payroll.  The Pinnacle Companies' inability to cover payroll was caused by Defendant Gary's use of corporate funds to pay his personal expenses.

34.     After the creation of the First Amendment to Operating Agreement for PAMG, the Pinnacle Companies Managing Member ownership percentages were as follows:

A. **Pinnacle Holdings Group, LLC.**

    i.   Trinity International, LLC 30%;

    ii.  FNB Media, LLC 30%;

    iii. Excelura, LLC 30%; and

    iv.  JTC Holdings, LLC 10%.

    B.  **Pinnacle Advertising & Marketing Group, LLC.**

       i.  Trinity International, LLC 51%;

      ii.  FNB Media, LLC 5.6%;

     iii.  Excelura, LLC 5.6%; and

     iv.  JTC Holdings, LLC 10%;

      v.  SMGI United, LLC 27.8.

    C.  **Pinnacle Digital, LLC.**

       i.  Pinnacle Holdings Group, LLC 90%; and

      ii.  JTC Holdings, LLC 10%.

    D.  **Pinnacle Advisory Management, LLC.**

       i.  Pinnacle Holdings Group, LLC 100%.

**C.**    **JTC's Contributions and Rights as a Managing Member.**

35.    As part of becoming a Managing Member, JTC agreed to make cash capital contributions to the Pinnacle Companies.  Over time, JTC made the following cash capital contributions to the Pinnacle Companies which total $1,250,000.00:[2]

      ii.  Pinnacle Holdings Group, LLC:  $500,000.00;

     iii.  Pinnacle Advertising and Marketing Group, LLC:  $600,000.00;

     iv.  Pinnacle Digital, LLC:  $150,000.00.

36.    The Managing Members of the Pinnacle Companies intended for JTC and the other Managing Members to serve as a Managing Member for as long as the Pinnacle Companies exist.

---

[2] JTC's capital contributions are reflected in the Pinnacle Companies' operating agreements (Composite **Exhibit 1**).

*See* Composite **Exhibit 1**: Operating Agreements for Pinnacle Holdings, PAMG, and Pinnacle Digital.

37.     JTC is a Managing Member of the Pinnacle Companies with all rights afforded to Managing Members under the Pinnacle Companies' operating agreements.  *See*, Composite **Exhibit 1**.

**D.**     **Defendant Gary's Improper Use of the Pinnacle Companies' Funds and Demands for More Money from JTC.**

38.     On as early as November 6, 2014, Defendant Gary began using the Pinnacle Companies' and specifically PAMG's funds, to pay his personal American Express card in its entirety on a monthly basis without ever submitting expense reports.

39.     This improper pattern of behavior continued to occur through at least August 2017. Examples of the improper personal expenses which Defendant Gary has routinely charged to the Pinnacle Companies include the following:

     a.     Tuition at St. Joan of Arc Catholic School;

     b.     ADT Security services;

     c.     Guns and ammunition from K&W Gunworks;

     d.     Guns and ammunition from Gun World;

     e.     Tommy Bahama clothing;

     f.     Neiman Marcus clothing;

     g.     Victoria's Secret clothing;

     h.     Gucci clothing;

     i.     Burberry clothing;

     j.     Xbox Live video game subscriptions;

      k.      Netflix subscriptions;

      l.      ITunes subscriptions and purchases;

      m.      Furniture from El Dorado Furniture store;

      n.      Car payments to a Land Rover dealership in Pompano Beach, Florida;

      o.      Groceries from Publix and Trader Joes;

      p.      Wine from Cake Bread Cellars;

      q.      Wine from Opus One Winery;

      r.      Food and alcohol from some of the most expensive restaurants in the country (including Del Frisco's and Morton's steakhouses); and

      s.      Thousands of dollars in legal fees to attorney Philip Schwartz to pay for legal fees associated with Defendant Gary's divorce proceeding.

40.     The American Express statements reveal that Defendant Gary improperly charged hundreds of thousands of dollars in personal expenses to the Pinnacle Companies from 2014-2017.

41.     None of Defendant Gary's personal expenses paid by the Pinnacle Companies were ever disclosed to, or approved by, the Managing Members.

42.     The detail and nature of Defendant Gary's personal expenses were never disclosed to the Pinnacle Companies' Chief Financial Officer who, based solely on Defendant Gary's instructions, improperly classified these expenses as proper business expenses of the Pinnacle Companies.

43.     At the same time Defendant Gary began improperly charging his personal expenses to the Pinnacle Companies, he began demanding capital contributions from the Pinnacle Companies' Members, including JTC, falsely claiming such contributions would be used for payroll when they were, instead, being used to fund his personal expenses.

44.     In other words, while attempting to recover from his personal bankruptcy, Defendant Gary orchestrated a scheme whereby he would use the Pinnacle Companies to pay for essentially all of his monthly personal expenses.  When Defendant Gary's personal expenses began to tap-out the Pinnacle Companies' resources, Defendant Gary, in violation of Section 9.1 of the Operating Agreements, began demanding additional capital contributions from JTC and the Pinnacle Companies' other members.

**E.     JTC Becomes Suspicions of Defendant Gary's Management of the Pinnacle Companies and Files Suit in Florida.**

45.     In September 2015, JTC became suspicious about why Defendant Gary was continuously asking for additional capital contributions in excess of the $1,250,000 that JTC had already contributed to the Pinnacle Companies.  In order to make an informed decision on whether to invest these additional funds and understand why the Pinnacle Companies were unable to pay their expenses, commencing in September 2015, JTC requested financial information regarding the Pinnacle Companies.  JTC's requests were initially made in an informal manner, and, when Defendant Gary refused, formal written demands were made in accordance with the Pinnacle Companies' operating agreements and applicable Florida law.

46.     Defendant Gary refused to produce the requested and required records despite numerous demands from JTC.  Defendant Gary's actions resulted in JTC bringing the Records Action.

47.     During discovery in the Records Action, the Pinnacle Companies Chief Financial Officer, Evelyn Lopez ("Lopez"), testified under oath that the Pinnacle Companies had paid, on average, $20,000.00 per month for the expenses Defendant Gary charged on his American Express card.  However, Defendant Gary had never submitted a single credit card statement, or expense

report, to the Pinnacle Companies CFO so she could verify that the charges were related to the Pinnacle Companies' legitimate expenses.

48.     Lopez further testified that each month, without ever verifying Defendant Gary's expenses, she arbitrarily records half of the expenses as travel costs and the other half as meals and entertainment as directed by Defendant Gary.

49.     Although specifically requested in JTC's records request and in the Records Action, Defendant Gary never disclosed or produced the American Express credit card statements.

50.     After the deposition of the Pinnacle Companies CFO revealed the existence of the American Express charges, JTC specifically demanded production of the American Express statements in the Records Action, which Defendant Gary refused.

51.     After refusing for over a year to disclose his American Express credit card statements to JTC, in August and October 2017, Defendant Gary finally produced the statements pursuant to court order in the Records Action.  Defendant Gary only produced the records after being ordered by the Florida Court to do so pursuant JTC's Motion to Compel.  In the same order, the Florida Court awarded JTC its attorneys' fees and costs.

52.     Pursuant to Court Order, Defendant Gary produced his American Express card statements from August 2014 through August 2017 (account number ending in 65168).  Those American Express statements, along with the Pinnacle Companies' General Ledger and Trial Balances, establish the facts alleged in this Complaint that Defendant Gary has wrongfully used the Pinnacle Companies' assets to pay for his personal expenses.

**F.      Defendant Gary Dissolves Three of the Pinnacle Companies in Violation of the Operating Agreements and Dilutes JTC's Membership Interest in the Pinnacle Companies to Zero.**

53.     Not only did Defendant Gary use hundreds of thousands of dollars of the Pinnacle Companies' money for personal expenses, he also improperly dissolved Pinnacle Holdings, Pinnacle Digital and Pinnacle Advisory and then diluted JTC's membership interest in PAMG to zero.

54.     For purposes of Defendant Gary's improper dissolving of Pinnacle Holdings, Pinnacle Digital and Pinnacle Advisory and his improper dilution of JTC's membership interest in PAMG, the following provisions from each of the operating agreements for the Pinnacle Companies are relevant:

\*              \*              \*              \*              \*

1.19.   "**Unanimous vote of the Members**" means that all the Members must vote in conformity and in agreement to take on a particular matter as set forth herein below.

9.1.     **Contribution of Member.**   Each of the Members must contribute to the Company as its initial Capital Contribution cash, services, or other property in an amount set for the next to its name in **Exhibit "A."**   The contribution must be made within 30 days after the execution of this Operation Agreement.   Except as otherwise provided hereafter, **the Members shall have no right or obligation to make any further capital contributions to the Company. . .**   (emphasis in the body added)

9.5.     **Limited Liability of Members.**   The liability of the Members is limited to the Capital Contribution with respect to their Interests, **and no Member (other than as hereinafter provided) has any obligation to contribute money to, or in respect of the liabilities or obligations of, the Company, nor will the Members be personally liable for any obligation of the Company.** . . (emphasis in body added)

16.1.   **Dissolution of Company.**   The term of the Company begins on the Effective Date and the Company must be dissolved and its business terminated upon the earliest occurrence of any of the events described in Section 608.441 of

the Act (or a successor provision in the Act) or as set forth in this Operating Agreement, **or upon the unanimous consent of all the Members. . .** (emphasis in body added)

18.4.   **Amendments.**   The Members may amend this Operating Agreement **only by the unanimous approval of all of the Members**. (emphasis in body added)

55.   After JTC began demanding accounting information concerning the Pinnacle Companies in early September 2015, Defendant Gary on September 17, 2015 improperly, and without proper notice, called a meeting of the Managing Members of the Pinnacle Companies (the "September Meeting").

56.   The September Meeting was held telephonically by Defendant Gary on September 17, 2015.  Having failed to receive proper notice, Daniel Bishop, JTC's representative, was not in attendance, nor was anyone else in attendance on behalf of JTC.

57.   At the September Meeting, Defendant Gary made a motion that Pinnacle Digital, Pinnacle Management and Pinnacle Holdings be "shut down" and that everyone's shares be reduced to zero, all assets and liabilities were to be transferred to PAMG, the operating agreements of the dissolved companies would be terminated, and Defendant Gary would retain the names and each of the LLC's 100%, to do with as he saw fit.  All members in attendance voted in favor of the motion.  Because JTC neither attended the improper meeting nor voted in favor of the motion, the action was not taken by unanimous consent of all the members, in violation of the Pinnacle Companies' Operating Agreements.

58.   At the September Meeting, Defendant Gary also made a motion that each member agree to either fund their respective shares of an outstanding $1.1 million liability or, failing such an agreement, to agree to have its membership interest reduced to zero.  Any member not agreeing

to fund its share of the liability would have their interest diluted to zero.  All members in attendance voted in favor of the motion, except JTC, who was not present.  Because JTC neither attended the improper meeting nor voted in favor of the motion, this action too was not taken by unanimous consent of all the members, in violation of the Pinnacle Companies' Operating Agreements.

59.     Despite no unanimous consent for these actions, Defendant Gary carried out the plan and on January 4, 2017, Defendant Gary dissolved Pinnacle Digital, Pinnacle Advisory, and Pinnacle Holdings.

60.     On February 20, 2017, JTC emailed Defendant Gary to request JTC's Schedule K-1 related to its membership interest in the Pinnacle Companies.  The same day, Defendant Gary responded and wrote that JTC's membership in the Pinnacle Companies had been diluted, thus "there is no K-1 coming."

61.     On March 20, 2017, despite previously informing JTC that it would not receive a K-1, Defendant Gary emailed JTC form 2016 K-1s for all of the Pinnacle Companies except for Pinnacle Advisory, LLC ("JTC K-1s").  (The K-1's are included herein as **Exhibit 3**).

62.     The JTC K-1s refer to JTC as a "Disregarded Entity" and show that JTC had a 10% share of "Profits, Loss and Capital" at the beginning of 2016.

63.     The JTC K-1s also show that JTC's share of "Profits, Loss and Capital" at the end of 2016 is 0%.

64.     The JTC K-1 for Pinnacle Holdings Group, LLC also shows JTC's capital account balance decreased by $870,399.00 during 2016.

65.     The JTC K-1 for PAMG states that "as of January 1, 2016, [JTC's] investment in Pinnacle Adverting and Marketing Group, LLC ended."  This is despite the fact the same K-1 acknowledges that as of January 1, 2016, JTC's ownership interest in PAMG was 10%.

66.     On April 26, 2017, JTC objected to the JTC K-1s in writing and demanded that Defendants fully reinstate JTC's 10% interest therein and confirm in writing through a capital account statement that JTC's interest has been fully restored.  A copy of the demand letter is attached hereto as **Exhibit 4**.  Defendants never responded to the letter.

67.     These facts, when considered in totality, demonstrate that Defendant Gary hatched a plan to dupe investors into investing in the Pinnacle Companies, whose purpose was to fund Defendant Gary's extravagant personal lifestyle.  When JTC became suspicious, Defendant Gary refused to produce the Pinnacle Companies' records, dissolved three of the Pinnacle Companies, and then diluted JTC's membership interest and investment in excess of $1.25 million to zero, and then continued to charge his entire American Express bills on a monthly basis to the Pinnacle Companies.  As a result of Defendant Gary's improper actions, JTC brings the following claims.

## FIRST CLAIM FOR RELIEF
### (Conversion Against All Defendants)

68.     JTC incorporates by reference the allegations set forth in paragraphs 1 through 67 as if fully reiterated herein.

69.     Improperly and without JTC's permission or authorization, Defendants exercised dominion and/or ownership over JTC's capital contributions and membership in the Pinnacle Companies as evidenced by the JTC K-1s showing JTC's membership interest in the Pinnacle Companies is 0% as of December 31, 2016.

70. Defendants have an obligation to protect JTC's capital contributions and membership interest in the Pinnacle Companies pursuant to their applicable operating agreements.

71. Defendants have refused to restore JTC's capital account and membership interest in the Pinnacle Companies despite JTC's demands for Defendants to do so.

72. As a result of Defendants' actions, JTC has suffered damages in the loss of its capital contributions into the Pinnacle Companies and its membership interest in the Pinnacle Companies.

73. WHEREFORE, Plaintiff JTC Holdings LLC demands judgment against Defendants Peter F. Gary, Pinnacle Holdings Group, LLC, Pinnacle Advertising & Marketing Group, LLC, Pinnacle Advisory Management, LLC, and Pinnacle Digital, LLC, jointly and severally, in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000), which represents JTC's investment in the Pinnacle Companies, plus prejudgment interest, for its costs and attorneys' fees herein expensed, and for such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract Against Defendant Gary and the Pinnacle Companies)

74. JTC incorporates by reference the allegations set forth in paragraphs 1 through 73 as if fully reiterated herein.

75. The Pinnacle Companies and Defendant Gary had a duty under the respective operating agreements not to take certain actions unless such actions were approved by unanimous consent of all the members.

76. The Pinnacle Companies and Defendant Gary breached this duty when they, without unanimous consent of all the members:

a.     In violation of Section 16.1 of the respective operating agreements dissolved Pinnacle Digital LLC, Pinnacle Advisory Management LLC and Pinnacle Holdings Group. LLC and assigned the rights in such Pinnacle Companies to Peter Gary;

b.     In violation of Sections 9.1 and 9.5 of the Pinnacle Companies' operating agreements, by motion passed without unanimous consent of all members, required an additional capital contribution of all the members to meet a $1.2 million obligation of the Pinnacle Companies.  The motion mandated that failure to make such a contribution would result in the total dissolution of the member's interest.  Such action, in order to be legitimate, would require an amendment to the operating agreements passed pursuant to Section 18.4, which was not done. Hence, the action taken was in breach of the operating agreements.

77.     The actions of the Defendants damaged JTC in that it resulted in the loss of JTC's 10% interest in Pinnacle Digital, LLC, Pinnacle Advisory Management LLC and Pinnacle Holdings Group, LLC and caused JTC to lose its entire capital contributions in the Pinnacle Companies.

78.     WHEREFORE, Plaintiff JTC Holdings, LLC demands judgment against Defendants Peter F. Gary, Pinnacle Holdings Group, LLC, Pinnacle Advertising & Marketing Group, LLC, Pinnacle Advisory Management, LLC and Pinnacle Digital, LLC, jointly and severally, in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000), which represents JTC's investment in the Pinnacle Companies, plus prejudgment interest, for its costs and attorneys' fees herein expensed, and for such other relief as the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty Against Defendant Gary)**

79.     JTC incorporates by reference the allegations set forth in paragraphs 1 through 78 as if fully reiterated herein.

80.     Pursuant to § 605.04091, Fla. Stat. (2017), Defendant Gary as CEO of the Pinnacle Companies, owed a fiduciary duty to all of the Pinnacle Companies' Members including JTC during all periods relevant to this litigation.

81.     As a fiduciary, Defendant Gary had the duty to exercise the utmost good faith, fidelity, honesty, and loyalty in dealing with JTC and all of the Pinnacle Companies' Members.

82.     As a fiduciary, Defendant Gary had the duty of candor of communication, including the duty to disclose all material facts affecting the Pinnacle Companies' financial status.

83.     As a fiduciary, Defendant Gary had the duty to act in the best interests of the Pinnacle Companies and their Members and to not self-deal for his own personal benefit and to the detriment of the Pinnacle Companies and the Pinnacle Companies' Members.

84.     As a fiduciary, Defendant Gary had the duty to protect the Pinnacle Companies' assets and to ensure that all expenses paid with the Pinnacle Companies' funds serve a legitimate business purpose.

85.     As a fiduciary, Defendant Gary had the duty to ensure all of the Pinnacle Companies' Members' capital accounts were properly protected and maintained.

86.     Defendant Gary breached his fiduciary duties to JTC when he failed to properly maintain JTC's capital account, improperly diluted JTC's membership interest, refused to provide JTC with complete and current financial records for the Pinnacle Companies despite demands from

JTC, improperly demanded additional capital contributions, and failed to use the Pinnacle Companies' assets in furtherance of the Pinnacle Companies' business purposes.

87.     Defendant Gary breached his fiduciary duties to JTC when he charged thousands of dollars in personal expenses each month to the Pinnacle Companies.

88.     Defendant Gary's breaches of his fiduciary duties were done with intentional misconduct and were grossly negligent for all of the reasons stated above.

89.     JTC suffered damages as a result Defendant Gary's breach of fiduciary duty and because Defendant Gary engaged in intentional misconduct and gross negligence, JTC is entitled to punitive damages regarding its breach of fiduciary duty claim against Defendant Gary.

90.     WHEREFORE, Plaintiff JTC Holdings, LLC demands judgment against Defendants Peter F. Gary, Pinnacle Holdings Group, LLC, Pinnacle Advertising & Marketing Group, LLC, Pinnacle Advisory Management, LLC and Pinnacle Digital, LLC, jointly and severally, in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000), which represents JTC's investment in the Pinnacle Companies, punitive damages, plus prejudgment interest, for its costs and attorneys' fees herein expensed, and for such other relief as the Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### (Accounting Against All Defendants)

91.     JTC incorporates by reference the allegations set forth in paragraphs 1 through 90 as if fully reiterated herein.

92.     The legal relationship between the parties has existed since on or about October 1, 2014, and, due to the simultaneous management of four (4) related companies, has involved extensive and complicated accounting necessary for the effective management of the entities

involved, all of which makes it unclear whether JTC's remedy at law is as full, adequate and expeditious as it would be in equity.

93.     WHEREFORE, Plaintiff JTC Holdings, LLC prays for adjudication of JTC's right to a full and complete accounting from Defendants Peter F. Gary, Pinnacle Holdings Group, LLC, Pinnacle Advertising & Marketing Group, LLC, Pinnacle Advisory Management, LLC, and Pinnacle Digital, LLC and for such orders of the Court as will require such Defendants to provide JTC with all records and copies of documents since July 21, 2010, the date Mr. Gary formed PAMG.

**Plaintiff demands a trial by jury of all issues so triable.**

DATED:  April 12, 2018

Respectfully submitted,

**MOYE WHITE LLP**

s/ *Patrick J. Hickey*
**Patrick J. Hickey #41592**
1400 16th Street, 6th Floor
Denver, Colorado 80202
Telephone (303) 292-2900
FAX:  (303) 292-4510
Email: patrick.hickey@moyewhite.com

*Attorneys for Plaintiff*